# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| SHARRON P. McCLAIN, | ) | |
| Plaintiff, | ) | Case No. 3:12-00307 |
| | ) | Chief Judge Haynes |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff, Sharron P. McClain, filed this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2674, against the Defendant United States. Plaintiff asserts claims for medical malpractice arising out of Plaintiff's bilateral breast reduction surgery on December 10, 2010 at the Veteran's Administration ("VA") Hospital in Nashville. After Plaintiff's surgery and discharge, Plaintiff developed severe necrosis causing skin and breast damage that will require two or three reconstructive surgeries to correct.

Before the Court is the United States's motion for summary judgment (Docket Entry No. 17) contending in sum, that Plaintiff lacks expert proof that any act or omission of the VA's physicians who performed this surgery, was the proximate cause of Plaintiff's injuries. In essence, Plaintiff responds that her expert's qualifications, his review of the evidentiary record and the VA hospital records provide ample bases for his opinions that the VA surgeons' acts and omissions caused Plaintiff's injuries. In addition, Plaintiff cites material factual disputes based upon (1) Plaintiff's fitness for this surgery, (2) the contents of the VA's surgery report and the prolonged absence of the supervising surgeon and the parties' experts on the standard of care and the VA surgeons'

1

performance.

For the reasons set forth below, the Court concludes that a hearing is necessary on the admissibility of Plaintiff's expert proof on whether the VA physician's lack of adequate treatment caused the excessive thinning of the tissue in the surgical area is admissible. The Court also concludes that Plaintiff's proof of the extended lack of supervision of the resident who closed the surgical area could support a judgment on Plaintiff's claim of negligence. The Court also concludes that material factual disputes exist on the contents of the surgery report for Plaintiff's surgery and on whether Plaintiff was a suitable candidate for this surgery.

## A. Review of the Record[1]

For the purposes of the Defendant's motion for summary judgment, the relevant facts are Plaintiff underwent a bilateral breast reduction surgery that is referred to as the Wise procedure, a common procedure for doctors, including the physicians in this controversy. (Docket Entry No. 20-1, Martin Deposition at 14, Exhibit 21). The surgery at the VA hospital in Nashville commenced at 11:57 on December 10, 2010 and was performed by Dr. John Summitt, the supervising surgeon and Dr. Navunjun Grewal, a resident intern at the VA hospital. (Docket Entry No. 19-4, 12/10/2010 Surgery Report). According to the operation report, Dr. Summitt was "present and scrubbed for the entire case". Id. at 1,2. Plaintiff's surgery lasted until 5:52 p.m. Id. at 1. After Plaintiff's discharge,

---

[1] Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are material factual disputes. Thus, this section does not constitute findings of fact under Fed. R. Civ. P. 56.

Plaintiff began to experience pain and severe necrosis in the skin area around her breasts (Docket Entry No. 19-6, December 2010 Medical Records).

Dr. David Martin, Plaintiff's expert, was graduated from the Johns Hopkins Medical School, is board certified in reconstructive surgery and routinely performs breast reductions in the Nashville area. (Docket Entry No. 23-1, Dr. Martin Report and Declaration at 2-4, Exhibit 1). In addition, Dr. Martin previously practiced at the VA hospital in Nashville. Id. For his expert report, affidavit and deposition testimony, Dr. Martin reviewed the depositions of Drs. Grewal and Summitt who performed the initial breast reduction procedure as well as Plaintiff's medical records. Id. Dr. Martin notes that during Plaintiff's surgery, Dr. Summitt left the operating room for several hours, but VA operation report reflects that Dr. Summitt was present during the entire surgical procedure. Id. The VA operation report fails to reflect that Dr. Summitt, the supervising doctor left the surgical room for several hours. Id. According to the surgical nurse, Dr. Grewal experienced problems closing the surgical area that required summoning Dr. Summitt to return to the operating room. (Docket Entry No. 19-3, Vavra Deposition at 27-29). Nurse Vavra testified that Dr. Summitt left the operating room around 1:00 p.m. and that the surgery lasted until 5:42 p.m. Id. and Docket Entry No. 19-10 at 1. Neither Dr. Grewal nor Dr. Summitt noted the level of removal of the subcutaneous tissue in their operation report. (Docket Entry No. 18-9, Grewal Deposition at 29-30, Dr. Summitt Deposition at 44-45).

As to Plaintiff's necrosis of the skin in the area of her surgery, Drs. Martin, Grewal and Summitt agree that excessive thinning of Plaintiff's subcutaneous tissue can cause ischemia and necrosis. (Docket Entry No. 20-1, Dr. Martin Deposition at 53, Exhibit 21). These physicians also agree that if the level of subcutaneous tissue removal is appropriate, then Plaintiff would not

3

otherwise have suffered an injury. Id. Dr. Grewal and Dr. Summitt agree that cutting the blood supply can cause the necrosis and resulting injury. (Docket Entry No. 18-9 Grewal Deposition at 29, 39; Docket Entry No. 18-10 Dr. Summitt Deposition at 42, Exhibits 8, 9). According to Dr. Martin, the applicable standard of care is not to thin the subcutaneous tissue of the female breast excessively or otherwise the excessive thinning causes an interruption of blood flow. (Docket Entry No. 20-1, Martin Deposition at 53; See also Docket Entry No. 18-9 Grewal Deposition at 29, 39 and Exhibits 8 and 21 thereto). Dr. Grewal and Dr. Summitt deny there was excessive thinning, but the operative report lacks information and detail on Plaintiff's skin condition.

Aside from the tissue thinning, Dr. Martin cites Dr. Summitt's prolonged absence from Plaintiff's surgery for several hours, as a deviation from the standard at VA hospital for the supervision of residents who are performing surgeries:

> The standard of care in the community where I practice and where the Defendant is found is the same or similar. The standard of care is for an inexperienced resident (Dr. Grewal) to remain adequately supervised by the attending physician (Dr. Summitt) during the performance of the plaintiff's breast reduction surgery
>
> ...the Defendant fell below the standard of care by allowing Dr. Grewal, a resident physician, to remain unsupervised to close which during the closing additional thinning was required to effect closure but it was excessive. By the time Dr. Summitt returned to the operating room, the damage or injury had occurred beneath the surface of the skin, and would be concealed front view once the first deeper sutures were placed. Injuries of this magnitude beneath the surface were irreparable even if identified at the time of surgery or had they been recognized during the days or weeks that followed. The operative report indicates that Dr. Summitt was present during the operation at all times which he was not.

(Docket Entry No. 23-1 Dr. Martin Declaration and Report at 5-6).

The factual record reflects that for several hours after Dr. Summitt left the operating room, Dr. Grewal was left to close the opened areas and was "doing both sides simultaneously, one side, the other side." (Docket Entry No. 18-9 Grewal Deposition at 77). Dr. Martin cites the attending

4

surgical nurse's testimony that Dr. Grewal experienced difficulty closing the area of Plaintiff's surgery and this nurse had to call Dr. Summitt back to the operating room for this closure . (Docket Entry No. 23-1 Dr. Martin Declaration and Report at 7).

The parties' experts, Drs. Brian Tierney and Martin, disagree on whether the appropriate standard of care was violated. Dr. Tierney states that Plaintiff posed a higher risk of a bad outcome, (Docket Entry No. 20-3 Tierney Revised Report at 4), but Dr. Grewal deemed Plaintiff was a "good candidate" for this surgery. (Docket Entry No. 18-9, Grewal Deposition at 52). In his revised report, Dr. Tierney cites <u>inter alia</u>, the VA's medical records as demonstrating an adequate thickness, but the accuracy of operative report is disputed because Dr. Summitt departed the operating room for several hours and the report lists Dr. Summitt as present throughout the surgery. Dr. Martin also disagrees with Dr. Tierney on whether Dr. Grewal possessed the requisite experience to perform this surgery without supervision. (Docket Entry No. 20-1 Martin Deposition at 53, 58, 62-63, Exhibit 21) and Docket Entry No. 20-3, Tierney Report at 4-5).

### B. Conclusions of Law

"The very reason of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment <u>sua sponte</u>, so long as the opposing party was on notice that she had to come forward with all of her evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). <u>Accord, Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment 'shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> **As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.** Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). <u>But</u> <u>see</u> <u>Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties as described by the Court in <u>Celotex</u>:

6

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrating the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (cites omitted). See also Hutt v. Gibson Fiber Glass Products, No. 89-5731 (6th Cir. filed September 19, 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." quoting Liberty Lobby)).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, **summary judgment will not lie if the dispute about a material fact is `genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.**
>
> * * *
>
> Progressing to the specific issue in this case, we are convinced that **the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits.** If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, **the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.** The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. **The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'**

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

[I]n ruling on a motion for summary judgment, the court must construe the evidence

8

in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Company, 791 F.2d. 43, 46 (6th Cir. 1986) app. 840 F.2d 16 (6th Cir. 1988) (unpublished opinion) (citation omitted).

The Court of Appeals further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) cert. denied 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). In this district, the parties must provide specific references to the proof upon

which they rely. See Local Rule 56.01(c) requiring each party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'

6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

> 10. The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.

Street, 886 F.2d at 1479-80.

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Under the FTCA, an injured person can file an action against the United States for the negligent acts or omissions of a government employee acting within the scope of his or her official duties. 28 U.S.C. §§ 2674 and 2679(b)(1). See also Ward v. United States, 838 F.2d 182, 184 (6th Cir. 1988); Hinson v. NASA, 14 F.3d 1143, 1147 (6th Cir. 1994). For tort claims, the FTCA applies the substantive state law where the alleged tort occurred. Ward, 838 F.2d at 184.

Tennessee's Medical Malpractice Act, Tenn. Code Ann. §§ 29-26-115-20, "codifies the common law elements of negligence--duty, breach of duty, causation, proximate cause, and damages." Kilpatrick v. Bryant, 868 S.W.2d 594, 598 (Tenn. 1993), citing Tenn. Code Ann. § 29-26-115(a). For an action under Tennessee's Medical Malpractice Act:

[T]he plaintiff in a medical malpractice case has the burden of proving the following:

(1) **The recognized standard of acceptable professional practice in the profession and the specialty thereof,** if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

Id. at 597-98, quoting Tenn. Code Ann. § 29-26-115(a) (emphasis added).

Tennessee law creates a legal presumption that "a medical practitioner has discharged his full duty to a patient and [Tennessee courts] will not presume negligence from the fact that the treatment was unsuccessful." Watkins v. United States, 482 F. Supp. 1006, 1012 (M.D. Tenn. 1980). As pertinent here, as stated in Akins v. Novinger, 322 F. Supp. 1205 (E.D. Tenn. 1970), Tennessee law creates a special duty for general practitioners:

[If a general practitioner] discovers that his patient's ailment is beyond "his knowledge or technical skill, or ability or capacity to treat with a likelihood of reasonable success" he is under a duty to disclose the situation to his patient "or advise him of the necessity of other or different treatment."

Id. at 1208 (quoting Osborne v. Frazor, 58 Tenn. App. 15, 25, 425 S.W.2d 768, 773 (1968)).[2] See also Jennings v. Case, 10 S.W.3d 625, 627 (Tenn. Ct. App. 1999).

Competent expert medical testimony is necessary to establish a doctor's breach of duty and

---

[2] Osborne has been superceded by Tenn. Code Ann. §29-26-115, but only as to the burden of proof in a medical malpractice action. Crawford v. Family Vision Ctr., Inc., No. 01-A-01-9005-CV-00184, 1990 WL 17735, *2 (Tenn. Ct. App. Nov. 16, 1990).

12

that the doctor's conduct or omission was the proximate cause of the plaintiff's injury, "unless the alleged malpractice is within the common knowledge of laymen." Ayers v. Rutherford Hosp., 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984). Absent this exception, Plaintiffs "must come forward. . .with expert opinion of the issues of negligence and proximate cause." Dolan v. Cunningham, 648 S.W.2d 652, 653 (Tenn. Ct. App. 1982). Under Tennessee law, the legal standard of proof is to a reasonable degree of medical certainty that the cited act or omission caused Plaintiffs' injury or "but for" causation. Kilpatrick, 868 S.W.2d at 598. Absent expert proof or matters within common knowledge of laymen, the plaintiff cannot sustain a judgment on his medical malpractice claim. Bowman v. Hennard, 547 S.W.2d 527, 530 (Tenn. 1977).

Yet, "injury alone does not raise a presumption of the defendant's negligence." Tenn. Code Ann. § 29-26-115(d). "An honest mistake in judgment is not sufficient to find a physician negligent." Ward, 838 F.2d at 187 (applying Tennessee law). Cause in fact is not proved when the injury would have occurred even if the conduct had not taken place. Waste Mgmt., Inc. of Tenn. v. South Central Bell Tel. Co., 15 S.W.3d 425, 430 (Tenn. Ct. App. 1997). This principle has come to be known as the "but for" test. Id. at 431. This test requires the plaintiff to introduce evidence that "affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough. . . [.]" Miller v. Choo Choo Partners, L.P., 73 S.W.3d 897, 901 (Tenn. Ct. App. 2001). In Miller, the court clarified that "pure speculation or conjecture" could not be the basis for a cause in fact. Id.

In sum, to prove in-fact causation, Plaintiffs must show that their injuries were "more likely

than not" caused by "the negligent actions of the defendant(s)." Volz v. Ledes, 895 S.W.2d 677, 679 (Tenn., 1995). In Kilpatrick, the Tennessee Supreme Court explained:

> [T]he rule requiring [that] causation be proven by a preponderance of the evidence dictates that Plaintiffs demonstrate that the negligence *more likely than not* caused the injury. Lindsey v. Miami Dev. Corp., 689 S.W.2d 856, 861 (Tenn. 1985) ("[p]laintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result."). To be sure, the mere occurrence of an injury does not prove negligence, and an admittedly negligent act does not necessarily entail liability. Doe v. Linder Const., 845 S.W.2d 173, 181 (Tenn. 1992). Even when it is shown that the defendant breached a duty of care owed to the plaintiff, the plaintiff must still establish the requisite causal connection between the defendant's conduct and the plaintiff's injury. Id. ("Proof of negligence without proof of causation is nothing").

868 S.W.2d at 598-99.

As to the Defendant's challenge of Dr. Martin's opinion on causation based upon the thinning of tissue, the Court acts as gatekeeper to the admission of expert testimony to ensure that juries are protected from misleading or unreliable evidence from the expert. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). This gatekeeping role of the trial judge with respect to expert testimony also applies to testimony based on specialized knowledge, as well as to scientific or other technical knowledge. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999). A properly qualified expert witness may testify in the form of an opinion when the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. Federal Rule of Evidence 704 provides that "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

Here, the Court concludes that a Daubert hearing is necessary on Dr. Martin's expert opinion

on the excessive thinning of Plaintiff's tissue. Given the narrow speciality involved and Dr. Martin's level of experience as a board certified reconstructive surgeon with years of this type of surgery in this community, the Court concludes that additional proof is required to assess whether Dr. Martin's opinion on the tissue thinning is admissible to establish a proximate cause of Plaintiff's injuries. That issue cannot be resolved on summary judgment. The Court also finds material factual disputes about Plaintiff's surgery report and Dr. Tierney's and Dr. Grewal's opinions on whether Plaintiff was a good candidate for this surgery. The Court concludes that the parties' experts also dispute the appropriate level of care.

Yet, the Court concludes that Plaintiff has submitted sufficient proof that Dr. Summit's extended absence for several hours from the surgery room while Dr. Grewal, a resident, was closing the surgical area, violated local community standards and was a proximate cause of Plaintiff's injuries.

For these reasons, the Court concludes that the Defendant's motion for summary judgment should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of January, 2014.

William J. Haynes, Jr.
Chief Judge
United States District Court